[No. 19004.    Department Two.    May 13, 1925.]

PACIFIC COAST STEEL COMPANY, *Respondent*, v. OLD NATIONAL BANK OF SPOKANE, *Appellant*.[1]

MUNICIPAL CORPORATIONS (163) — PUBLIC IMPROVEMENTS — CONTRACTS—ASSIGNMENT—ACCEPTANCE. A county and city are justified in withholding from an assignee of a bridge contract the balance due, in addition to the reserve fund of 15% for the purpose of paying claims for labor and material, in accordance with Rem. Comp. Stat., §§ 10320 and 10322, where the contract provided for such retention, on receiving notice of claims exceeding such 15%; and where the municipalities did not accept the assignment as covering the whole, but asserted a right to retain balances on each estimate as made.

SAME (96)—CONTRACTS—POWERS OF PARTICULAR OFFICERS—WAIVER OF CONTRACT PROVISIONS. No acceptance by either the county or the city of an assignment of a bridge contract is shown, where the county auditor returned the assignment with the statement that it could not be accepted as a whole, nor except on each estimate, the assignment was never sent to the city, and the city clerk was only notified thereof, and there was no action by the authoritative administrative bodies of either the county or the city accepting it.

SAME (109, 179)—RIGHTS AND REMEDIES OF MUNICIPALITY—STAKE HOLDER FOR LIEN CLAIMANTS. Where a county and city were withholding a balance due on a bridge contract for the purpose of paying claims for labor and materials, its payment into court to abide the decision in a suit brought to recover it is not a waiver of their right to hold the same for the benefit of claimants, which they at all times asserted in the suit.

[1]Reported in 235 Pac. 947.

SAME (147) — STATUTORY PROVISIONS — RESERVE FUND FOR LIEN CLAIMANTS—POWER TO INCREASE. Rem. Comp. Stat., § 10320, providing a reserve fund of 15% in contracts for public improvements, for the payment of labor and material claims, and that the provision of the act shall be deemed exclusive and supersede all provisions and regulations in conflict therewith, does not prevent a contract from providing that the municipality may retain amounts in excess of such 15 per cent, upon receiving written notice of excess labor or material claims.

Appeal from a judgment of the superior court for Whitman county, McCroskey, J., entered August 1, 1924, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*Wakefield & Witherspoon,* for appellant.

*Clegg & LaFollette, Williams & Cornelius,* and *Burcham & Blair,* for respondent.

MACKINTOSH, J.—C. L. Graves made a contract with Whitman county and Colfax city for the building of a bridge. In order to obtain money with which to finance his contract, Graves assigned to the appellant "all estimates . . . on work under contract." This assignment was mailed to the county auditor, who returned it to the appellant saying that the county would not accept it as an assignment covering the whole amount; that assignments should be filed on each estimate as it became due. The Colfax city clerk also was notified by the appellant of Graves' assignment to it. The appellant received from the city on assigned estimates approximately $12,500 and from the county $21,250. The amount received from the city was on warrants made payable to Graves and sent to appellant; the amount received from the county was on warrants payable to Graves, on which the county auditor placed an authorization for the appellant to endorse Graves' name. After the last payment received by the appellant, Graves allowed accounts for labor and ma-

terial to remain unpaid and various claims had been filed against the bond which he had furnished. After the work had been completed, the county and city paid to laborers and materialmen the fifteen per cent reserve fund which, according to the contract and by §§ 10320 and 10322 Rem. Comp. Stat., had been withheld from the estimates. This suit involves the amount remaining after the payment of the fifteen per cent reserve and the amounts already received by the appellant.

The contract provided, as already said, for retention by the city and county of 15 per cent of all estimates for the purpose of paying labor and material claims. It also provided that, if the city or county, prior to paying any of the estimates (that is the 85 per cent) received written notice from any laborer or materialman that they had claims for which liens might be filed under the laws of this state if the work were not a public work or claims which might be proper against the bond, that the city and county,

"   .   .   .   should have the right to retain out of the payments then due or to become due to said contractor an amount in addition to the 15 per cent above provided to be retained until the final completion of said work, sufficient to cover all such claims or claims of which notice shall have been given."

The question raised by this appeal is whether the appellant is entitled to the fund remaining in the hands of Whitman county and Colfax city other than the reserved 15 per cent, the appellant contending that it is entitled to the fund by reason of its assignment, and the respondent contending that, under the provisions of the contract, Whitman county and Colfax city are entitled to hold the funds until claims due from the contractor to laborers and materialmen are paid. These claims were filed with the municipalities; and

after they had notice of such claims, they refused to make any further payment to the appellant under its assignment until the claims were paid.

The municipalities base their refusal on the provisions of the contract which we have quoted. In the answer which the municipalities filed in the action, they insist upon their right, under this provision, to retain the fund until the claims have been paid, although they tendered the amount of the fund into court to be properly disbursed. The estimates which were paid by the municipalities to the appellant were paid before they had any notice of any outstanding claims for labor or material. The right which the appellant has, through its assignment, is the same right and no larger than that which Graves had by virtue of his contract. *First National Bank v. Seattle,* 71 Wash. 122, 127 Pac. 837.

To arrive at the rule of law which is applicable to the facts as outlined, it is necessary to consider several prior decisions of this court which have had under consideration situations arising under contracts similar to the one here.

In *State ex rel. Bartelt v. Liebes,* 19 Wash. 589, 54 Pac. 26, it was held that a contract for the construction of public work which provided that the contractor should not be paid until the claims for labor and material had been settled was a valid provision, and that, when the contract provided for the withholding of no special amount to meet those claims but provided that all the contract price shall be withheld until all the claims were paid, the entire contract price thus became a trust fund for the benefit of unpaid laborers and materialmen and that an assignee of the contractor would not be entitled to payment until the claims had been paid.

In *Dowling v. Seattle,* 22 Wash. 592, 61 Pac. 709,

there was a contract for public work, which provided that the contractor was to complete the work and pay for all labor and material, and that he should be allowed monthly 70 per cent of the amount earned by him upon estimates, and that the balance of 30 per cent of the contract price should be retained by the city to secure the payment of laborers and materialmen. An assignee was held entitled to the 70 per cent after the assignment had been assented to by the city, even though it was "true that the city by virtue of a provision of the agreement . . . might have withheld all payments from the contractor until it was satisfied that all just claims for labor and material had been fully paid;" the court saying that the city was, however, not obliged to withhold such payments and not having done so, it was not a trustee for the laborers and materialmen of any portion of the 70 per cent and that the assignee to whom payments had been made of the 70 per cent of the estimates was entitled to retain them.

In *First National Bank v. Seattle, supra,* the contract for public work provided that 70 per cent of the amount earned during each month should be paid to the contractor as the work progressed and that the remaining 30 per cent should be kept by the city to pay laborers and materialmen. The amount involved in that case was the balance due the contractor under the 70 per cent provision, the 30 per cent remaining having been paid out to the lien claimants. The assignee of the contractor asserted that it was entitled to the balance of the 70 per cent, as against laborers and materialmen and regardless of their claims. The contract provided that,

"The contractor agrees to pay the wages of all persons and . . . the board of public works may with-

hold any and all payments under this contract until satisfied that all wages have been fully paid.''

In addition, the assignment itself provided that ''this assignment is not valid as against any claim for labor, material, provisions and goods supplied and furnished in the prosecution of this contract.'' It was held that the balance of the 70 per cent not having been paid, and the city having knowledge of the liens for labor and material, the laborers and materialmen were entitled to the fund by reason of the provision of the contract giving the city the right to use such portion of the 70 per cent as was necessary to pay laborers and materialmen.

In *Northwestern National Bank v. Guardian Casualty & Guaranty Co.*, 93 Wash. 635, 161 Pac. 473, Ann. Cas. 1918D 644, a public work contract contained no provision for a reserve of any percentage as security for labor and material claims, but merely permitted the city to withhold payment until satisfied that all claims of that kind had been paid. The contractor, before beginning his work, assigned to the plaintiff in that action all amounts to which it was entitled under the contract. This assignment was immediately filed with the city comptroller. Thereafter, from time to time, as the work progressed and warrants became due for the work, they were paid to the assignee. The contract provided that the contractor agreed ''to pay the wages of all persons and for assistance of every kind employed on or about said work . . . and for any material therefor and the city of Bellingham *may* withhold'' sufficient to pay such claims. The assignee claimed the right to have the balance under the contract still unpaid delivered to it by reason of its assignment. In discussing the *Dowling* case, *supra*, the court said that the assignee in that case was entitled to its money for the reason that the ''assignments and

orders were made and accepted by the city prior to the the contractor's default''; and that, although the city *might* have withheld all payments from the contractor until satisfied that all claims for labor and material had been fully paid, yet not having done so, the assignee was entitled to what it had received. The court then noticed the assertion that the *Dowling* case had been overruled by the *First National Bank* case, *supra;* and held that the opinion in the latter case was not inconsistent with the *Dowling* opinion, for the reason that, in the bank case, the contract contained, in addition to the provisions of the *Dowling* contract, a provision that the contractor should not be paid until all labor and material, etc., had been paid for, and that the *First National Bank* case merely held that the assignment by the contractor to the bank was subject to the claims for labor and material as to the 70 per cent fund, while the *Dowling* assignments, not being subject to payment of labor and material claims were valid as against them. In considering the question before it, the court called attention to the fact that the contract contained no provision for an absolute reserve of percentage for the security of labor and material claims and contained nothing but a provision permitting the city to withhold payment until all claims had been paid, and as nothing had been held up by the city at the time the assignments were made, the court said that it must follow that the assignments were superior to any rights of laborers or materialmen and reaffirms this statement from the *Dowling* case: ''These orders constituted an equitable assignment of so much of the fund upon which they were drawn as was necessary for their payment.''

In *Title Guaranty & Surety Co. v. First National Bank,* 94 Wash. 55, 162 Pac. 23, the contract for a public improvement provided that 85 per cent of the

amount earned under the contract should be paid on monthly estimates and the balance of 15 per cent retained by the city until completion and acceptance of the work. It was held that the contractor's assignee was entitled to the 85 per cent, there being, as far as the opinion shows, no provision permitting the city to withhold any portion of the 85 per cent to satisfy laborers and materialmen.

In *National Surety Co. v. American Savings Bank & Trust Co.,* 101 Wash. 213, 172 Pac. 264, the public improvement was done under a contract providing that 70 per cent of the monthly estimates should be paid to the contractor and that 30 per cent should be retained for the purpose of protecting claims for labor and material. The contractor assigned his 70 per cent, the assignment providing that it should not be valid as against claims for labor and material. Held, that the assignment took precedence of labor and material claims which accrued and were filed with the city after 70 per cent of the estimates had been paid to the assignee, and the *Dowling* case and the *Northwestern National Bank* case, *supra,* were re-affirmed; the court holding that an absolute assignment by the contractor of any fund thereafter to become due him and not reserved by the contract for the protection of laborers and materialmen, when the assignment has been accepted by the municipality prior to the contractor's default and prior to any notice of unpaid labor and material claims, was a valid appropriation of the fund, and superior to any rights of laborers or materialmen; and that, where the city had merely the right, as in the case at bar, to withhold a portion of the estimates in addition to the reserved percentage for the purpose of paying labor and material claims, but did not exercise that right, the assignee would under those circum-

stances be entitled to the full amount coming to the contractor, the court saying:

"In the case of *Northwestern Nat. Bank of Bellingham v. Guardian Casualty & Guaranty Co., supra,* upon the authority of *Dowling v. Seattle* and *Maryland Casualty Co. v. Washington Nat. Bank, supra,* we held that an absolute and unqualified assignment by the contractor of any fund thereafter to become due to him and not reserved by his contract for the protection of laborers and materialmen, the assignment having been accepted by the city prior to the contractor's default and prior to any notice of nonpayment for labor and material, was a valid appropriation of such fund prior and superior to any rights of laborers and materialmen in the fund, and hence superior to any right of subrogation in the surety on the contractor's bond. In such a case, a payment by the city to the assignee, even after claims for labor and material had been filed, would be valid as to all but the reserve fund. In that case, however, it is distinctly indicated that the assignment was not, as here, expressly subject to claims for labor and material supplied in the prosecution of the work. An assignment so qualified is not an appropriation of the fund. Under such an assignment, as pointed out in *First Nat. Bank v. Seattle,* 71 Wash. 122, 127 Pac. 837, the appropriation of the fund does not take place until actual payment to the assignee, and then only *pro tanto.*

"In the last cited case, the assignment to the bank of the contractor's 70 per cent fund was, as here, expressly subject to claims for labor and material supplied in the progress of the work. In that case, however, contrary to the case here, the money over which the contest was waged as between the surety company and the bank as assignee of the contractor was still in the hands of the city. It was the last part of the 70 per cent fund, which had been held up by the city evidently in anticipation of claims for labor and material under a provision of its contract with the contractor *permitting* the city, but not *requiring* it, to hold up any part of the contract price until satisfied that all claims for labor and material had been paid. In that case,

marking a supposed distinction between that and the *Dowling* case, we said: 'Here the balance of this 70 per cent fund has not been paid the contractor, and the city has knowledge of these liens for labor and materials. In that case we held that the holders of the bonds so issued were entitled to their proceeds because the payments, being justified when made, were not invalidated by the contractor's subsequent default. In that case the payment was made when due under the contract, without notice of adverse claims. In this case the payment has not been made, and there is notice of adverse claims such as, under the language of the contract and the assignment, are entitled to preference.'

"This language clearly indicates that, had the money involved in the *First Nat. Bank* case been actually paid to the assignee bank by the city prior to the contractor's default and without knowledge or notice of any unpaid labor and material claims (which was actually done in the case before us), the payment would have been held valid and the bank would have been entitled to retain the money as against subsequently filed claims, notwithstanding the qualified nature of its assignment.

"If the above language from the case of *First Nat. Bank v. Seattle* is still adhered to, the assignment must be held to be an assignment of each installment of the money to become due to the contractor under the contract as earned, subject only to any claims for labor or material then existing and of which the city has notice when such installment falls due, and subject to the right of the city to hold up any such installment in anticipation of such claims. If, therefore, the city actually pays any such installment to the assignee without notice of labor or material claims and before default of the contractor, such payment must be held to pass an absolute title to the money under the assignment. The assignment was made for the very purpose of raising money with which to finance the performance of the contract. The contractor had the right to make an absolute assignment, unqualified by any reference to labor and material claims, of this seventy per cent which was to be paid to him on monthly estimates. He made an

assignment not absolute, but subject to claims for labor and material.    There were no such claims when this money was paid.    In order to accomplish the purpose intended; viz, that of aiding the contractor to finance the contract, the assignment must be construed as passing an absolute title to any part of the seventy per cent fund coming due to the contractor, if actually paid to the assignee at a time when there were no claims for labor or material filed and when the contractor was not in default on his contract.

"Appellant recognizes the force of our decision in the case of *First Nat. Bank v. Seattle*, but asks: How did the bank get the better right to this money merely by getting actual possession of it?    We have already answered this question in our construction of the assignment.    The following considerations make that construction almost imperative: While the original contract between the contractor and the city is not in the record, it is recognized in the briefs on both sides that the contract contained the usual provision authorizing the city to pay to the contractor on monthly estimates seventy per cent of the money earned each month as the work progressed, but required the city to withhold each month the other thirty per cent as a fund to meet claims for labor and material which might thereafter be filed.    Though it is not mentioned in the briefs, we assume that the contract or specifications therein referred to contained the usual provision that the city might withhold any and all payments under the contract until satisfied that all labor and material supplied for the work had been paid for; at any rate, this assumption is the one most favorable to appellant.    Such a provision, as pointed out in *Dowling v. Seattle, supra,* and again in *Northwestern Nat. Bank of Bellingham v. Guardian Casualty & Guaranty Co., supra,* amounts to no more than a permission to the city to exercise a discretion in the premises.    It creates no duty to any one on the city's part.    The assignment from the contractor to the bank was made on a printed city blank.    The statement that the assignment was not to be valid as against claims for labor and material appears underneath the contractor's signature and was evidently placed there as a recognition of the city's privilege to

hold up any or all of the money in its discretion. When, therefore, the city, without notice of claims and before default of the contractor, paid to the assignee the seventy per cent estimates, it acted within its rights and no one can complain. Neither the city nor labor or material claimants could then recover the money; . . ."

In *State ex rel. State Bank v. Scott*, 102 Wash. 510, 173, Pac. 498, the contract provided that 20 per cent should be retained for the purpose of securing claims of labor and material, and that the balance of 80 per cent, there being no provision that the municipality might retain any thereof until all labor and material were paid for, was within the complete control of the contractor, who might assign it and his assignee's rights would be superior to those of any one else, even though the contractor might subsequently default.

In *Beyer v. Zindorf*, 116 Wash. 199, 198 Pac. 977, the contract, providing for the construction of a public highway, did not authorize the retention of any percentage for the protection of laborers and materialmen, although the contract said that any part of the price earned might be retained by the municipality at its discretion to be applied on any claims due and unpaid. It was held that no trust was thereby created for materialmen and laborers.

The sum total of all these decisions seems to be that, where a contract provides for a specific amount of the contract price to be retained by the municipality for the payment of labor and material, the balance of the estimates may be assigned by the contractor, and that the assignee is entitled to receive all the assigned amounts, if:

(1) There is no provision in the contract that the municipality may, in addition to the percentage reserved, retain out of the balance amounts sufficient to cover labor and material claims;

(2) That even where such a provision for the retention of amounts in addition to the reserved percentage is contained in the contract, payments to the assignee by the municipality before any notice to it of any unpaid labor and material claims can be retained by the assignee;

(3) That the same result follows even where the contract does not provide that the municipality may retain amounts in addition to the reserved percentage if the contract obliges the contractor to pay all material and labor claims;

(4) That, where the contract provides that the municipality has the right to retain amounts in addition to the reserved percentage for the purpose of paying labor and material claims and assignment is made by the contractor and the assignment is *accepted* in its entirety by the municipality, the assignment thereby becomes binding and the municipality has no right thereafter to retain any amount above that specified in the retained percentage; and,

(5) That, where the contract provides that the municipality has the right to retain amounts in addition to the reserved percentage for the payment of labor and material claims, the municipality is not compelled to make any such additional retention, but, if it sees fit, may pay the entire amount of the estimates, less the reserved percentage to the assignee;

(6) That, where the contract provides that the municipality has the right to retain amounts in addition to the reserved percentage for the payment of labor and material claims, the municipality may accept such assignment, *pro tanto,* by paying estimates as they become due and still retain the right to refuse payment of later estimates and hold such amounts for the payment of claims.

Applying these rules to the facts in the present case, it must follow that the appellant was entitled to all the amounts that it received by virtue of its assignments and that, under those assignments, it would be entitled to the balance in the hands of the municipality, if the municipality had not asserted the right to withhold that amount for the purpose of meeting labor and material claims which had been filed with them. The record shows, however, that the municipalities have asserted this right and the appellant is therefore not entitled to these amounts unless the record shows that the municipalities have *accepted* the assignments as a whole from Graves to the appellant, so that their rights to retain the amounts have been lost. This calls for a consideration of the evidence on the question of acceptance of the assignments.

The evidence shows that Whitman county, when Graves' assignment to the appellant was presented to it, returned the assignment and advised the appellant that it could not be accepted, but that the county would accept assignments for each individual estimate; and, as such assignments were filed, warrants would be made out in the name of Graves and forwarded to the appellant; and that, pursuant to this suggestion of the county auditor, the appellant secured Graves' signature to several assignment form slips, which were not filled out but which were sent to the auditor. This would establish that the county had never accepted the assignment from Graves to the bank of the entire amount of the reserved estimate, but accepted the assignment of every monthly estimate as it became due, thereby at all times saving to itself the right to withhold the succeeding monthly estimate for the purpose of paying labor and material claims. Furthermore, it is to be doubted whether an assignment could be accepted by the county auditor which would be binding

on the county. It should be held necessary, in order to bind the municipality to an acceptance, that the administrative body having authority to make the contract should be the one which has exclusive authority to accept a full assignment of the amount due the contractor, less the reserved percentage. The same body which was the one making the contract is the one which has the power to determine whether or not the right to retain more than the reserved percentage shall be waived. This right cannot be waived for it by an administrative officer or employee, or by the simple receipt of the assignment from the assignee. It is, of course, waived by payment to the contractor or his assignee as to each payment; but, before payments are due, there must be some formal action of the appropriate body declaring a waiver of the provision as to the subsequent amounts to become due, otherwise the right to withhold for the benefit of claimants continues in the municipality.

So far as the city of Colfax is concerned, we find no assignment was ever filed, though it was notified by the appellant a couple of months after the assignment was made that it had the assignment. There is evidently no acceptance by the proper city authorities of the assignment, and this is further evidenced by the fact that the city warrants were made payable to Graves, although they were sent to the appellant. Under such a state of facts, we cannot hold that there had been an acceptance by either the county or the city of the assignment to the appellant.

The appellant, however, claims that the assignment is binding by reason of the decision of this court in *Seattle v. Liberman,* 9 Wash. 276, 37 Pac. 433, where the court sustained the acceptance by the city comptroller of orders drawn by a contractor upon an improvement fund and bound the city to make payment

thereof. It was held that, the assignment, having been given to the comptroller, gave the city notice of it and it was bound thereby, regardless of any acceptance by the comptroller. This statement is made without any supporting authority and does not conform to what we believe to be the proper rule. Again, in *State ex rel. State Bank v. Scott, supra,* reference is made to the fact that the assignment had not been filed with an officer of the town but that the town had actual notice of it and that the council took no action upon this information. The question of what was necessary in order to constitute acceptance of an assignment was not discussed in that case and the case is not authority for the position that an assignment is accepted merely by the fact that it may be filed with some municipal officer or that it has been called to the attention of some municipal body.

Some claim is made that, even though it should be held that the municipality *might* have withheld the portion of the estimates not covered by the reserved percentage, in this case they did not do so for the reason that, by this conduct, the municipalities have interpleaded and cannot now say that they have exercised the right which the contract gave them to withhold this money for the purpose of paying labor and material claims which might have been presented; that the action of the municipalities is such as is described in *Stusser v. Mutual Union Insurance Co.,* 127 Wash. 449, 221 Pac. 331, where it was said:

" 'It is of the essence of an interpleader suit that the plaintiff should be entirely indifferent between the conflicting claims, asserting no interest in himself in the fund in dispute.' "

The answer to this is that the municipalities throughout have asserted that they were withholding this amount by virtue of the permission given them in the

contract to withhold it for the purpose of meeting claims, and that this assertion is contained in the pleadings; and this assertion of the right to withhold is not waived by the fact that the amount was paid into court, for the payment into court did not have the effect of abandoning the contention made in the answers that, at all times since knowing of the existence of the claims, the municipalities have asserted the right under the contract to withhold the fund for the benefit of such claims. They are not, of course, claiming this amount for themselves, but are holding it for the benefit of the claimants. In a certain sense, they are stakeholders, the same as is the plaintiff in an interpleader suit, in that they do not expect to receive the amount themselves, but they are not the indifferent parties that plaintiffs in interpleader suits are, for they are asserting the right of one claimant to the fund as against another claimant.

It is finally contended by the appellant that the provision of the contract for giving the municipalities the right to retain more than the reserved percentage is void as against the appellant for the reason that § 10320, Rem. Comp. Stat. [P. C. § 9727-1], reads as follows:

"That contracts for public improvements or work by the state, or any county, city, town, district, board or other public body, shall provide, and there shall be reserved from the moneys earned by the contractor on estimates during the progress of the improvement or work, a sum equal to fifteen per cent (15%) of such estimates, said sum to be retained by the state, county, city, town, district, board or other public body, as a trust fund for the protection and payment of any person or persons, mechanic, subcontractor or materialman who shall perform any labor upon such contract or the doing of said work, and all persons who shall supply such person . . . Said fund shall be retained for a period of thirty (30) days following the

final acceptance of said improvement or work as completed, and every person performing labor or furnishing supplies towards the completion of said improvement or work shall have a lien upon said fund so reserved, . . . Provided, however, that where in any improvement or work the contract price shall exceed two hundred thousand dollars ($200,000), but ten per cent (10%) shall be reserved on estimates in excess of said sum . . . *The provisions of this act shall be deemed exclusive and shall supersede all provisions and regulations in conflict herewith.*"

Special emphasis is placed upon the portion we have italicised. It is appellant's argument that laborers and materialmen under this act must look exclusively to the reserved 15 per cent, and that all above that belongs to the contractor, who has the right to assign it, and that any provision in the contract for giving the municipality any right to reserve more than the 15 per cent conflicts with the act and is void. We do not take this view of the act. The act does not prohibit the making of a contract such as the one at bar; it merely provides that there shall be included in all such contracts certain provisions and those provisions are contained in this contract. The municipality is left free to add any other provisions which are not inconsistent with those contained in the act, the purpose of the act being to require the municipalities to protect laborers and materialmen by a reserved percentage of at least 15 per cent. Although this act was not in existence at the time the following decisions were made, still the principle announced in them is just as applicable to the situation now as to the facts existing when they were rendered. *State ex rel. Bartelt v. Liebes, supra,* and *Maryland Casualty Co. v. Washington National Bank,* 92 Wash. 497, 159 Pac. 689. In the former of these cases it was said:

"It is the contention of the relator that the provision in the contract between Loy and the city, providing that the bonds should not be issued until the contractor had paid for all labor and material was *ultra vires*, and that no privity of contract existed between the intervenors and the city. His position is that there was not at the time of the execution of the contract any provision of statute, or of the charter of the city, which conferred upon the board of public works, or the city, authority to insert in the contract the provision in reference to withholding payment from the contractor until the laborers and materialmen had been paid, and that for the same reasons the provisions of the ordinance in relation to the same subject were also void.

. . . The city, while not legally bound to do so, was nevertheless charged with the moral duty of protecting the men who labored upon, or furnished materials for, its public improvements; and the right to require its contractor to pay for the labor and material expended in its behalf, although not prescribed by any positive law, belonged to the city as an incident to its power to contract for the improvement. . . But counsel say there is no provision of statute or charter which expressly authorizes it. We reply that there is no provision which prohibits it, and inasmuch as the law has expressly conferred upon the city the power to make this improvement by contract, and has not limited or prescribed the mode in which it should be exercised, it seems to us to follow, as an incident of the power thus expressly granted, that the city may hedge its contract about with such stipulations and safeguards not inconsistent with the exercise of the right expressly conferred, as will best enable it to execute the power or enjoy the right which is expressly conferred. Suppose we concede that there is no legal duty or moral obligation upon the city to see that the laborers who work for its contractors are paid. It may nevertheless be to the best interests of the city to have the payment of laborers and materialmen secured. . . For the disposition of the present case, it is enough that the legislature, in the first instance, conferred upon the city authorities the general power to make certain public improvements by contract, which carried with it,

as an incident, the power to insert in such contracts reasonable regulations and provisions in furtherance of public convenience; and such is the character of the provisions in the contract under consideration."

And in *Maryland Casualty Co. v. Washington National Bank, supra,* the court said:

"The county, in turn, cannot escape such liability as may follow from provisions which, not contrary, though purely supplemental, to statute, are appropriate to a public contract."

The judgment must be affirmed.

TOLMAN, C. J., FULLERTON, HOLCOMB, and MITCHELL, JJ., concur.