CITY NATIONAL BANK *v* BOARD OF COMMISSIONERS OF DEKALB COUNTY ET AL.

[No. 13,425. Filed July 2, 1930.]

*Edgar W. Atkinson* and *Oak Husselman,* for appellant.
*Fred L. Bodenhafer* and *Howard W. Mountz,* for appellees.

NICHOLS, J.—Action by appellant against appellees to recover a sum of money due from the county to one Huffman for constructing a highway under contract with appellee board of commissioners in favor of Huffman, but the payment of which was withheld because appellant claimed the money under an assignment of Huffman to it, while certain laborers and materialmen had filed liens with the auditor of the county wherein they claimed priority over the assignment to appellant.

The various labor and material claimants, being appellees herein, respectively filed cross-complaints against appellant and against DeKalb County, in which they claimed priority of liens.

There being special findings in which the facts here involved are fully found, and based on evidence admitted without objection, and conclusions of law, we do not need to consider alleged error of the court in its rulings on demurrers to the pleadings. It appears by these findings, so far as we need to set them out, that appellee Huffman, on October 6, 1925, entered into a contract with appellee board of commissioners of DeKalb County, by which he agreed to furnish all the work, labor and materials for the construction of the Duncan improved gravel road, under the "Three-mile Road Law." The total contract price was $12,393.20. The funds were raised by sale of bonds.

The Southern Surety Company was the surety on the contractor's bond; the contract with the board provided specifically that, if the contractor failed to pay for the work, labor and materials used by him in said work, then the board of commissioners should have the right to pay such bills out of the fund provided for the building of such road; and the specifications provided that the Board should retain 20 per cent of the contract price until the final completion of the work; the fund now in controversy is this retained percentage.

When this action was begun, estimates had been allowed and paid until but $2,478.64 remained in the hands of the officials, which is the money in dispute. The road was completed and accepted by the board in due course. The contractor failed to pay for all the work, labor and materials used by him, and, on the acceptance of said work by the Board, and at the time of the beginning of this action, a large number of claimants had filed claims against the fund with the auditor of DeKalb County.

On May 7, 1926, appellant took from the contractor an assignment in writing of $4,000 of the funds then and thereafter to become due the contractor, as collateral

security for such sums as it should loan the contractor, a copy of which assignment was filed with the auditor of said county; after taking such assignment, appellant loaned money to the contractor, evidenced by promissory notes, as follows: On May 7, 1926, $1,000; on May 29, 1926, $1,000; on June 28, 1926, $2,000; the proceeds of these loans were credited to the account of Huffman, at appellant bank. The court found that these notes were unpaid, but did not find the total amount due appellant bank from the contractor.

Appellant filed its complaint in the DeKalb Circuit Court to recover said sum of $2,478.64, then in the hands of the county on its assignment. All persons who had filed claims were made parties defendant, as was also the board of commissioners. Appellee, the Southern Surety Company, on its application, was, without objection, admitted as a party defendant. The claimants to the fund filed cross-complaints against appellant and all codefendants, including the surety company on the contractor's bond, and to have their several claims paid out of such retained fund.

The surety company filed its answer and cross-complaint asking that the court determine the rights of all the parties in and to the fund, and that all valid claims against the fund be ordered paid therefrom to protect itself as surety on the contractor's bond. The board filed an answer of general denial to the complaint.

Appellant claimed the entire remaining fund, and asked that all claims of claimants be declared void, but it did not ask any judgment on the contractor's bond, nor against Huffman personally, and asked that the remaining fund be awarded to it on its assignment.

Among other things, the findings show that the following estimates and warrants were issued by order of the board: June 10, 1926, $1,584; July 7, 1926, $2,640; August 3, 1926, $240; September 8, 1926, $4,080;

October 5, 1926, $1,370.56. The total of said sums so paid was $9,914.56. All these warrants were delivered to appellant bank, and were by it credited to the account of Huffman, contractor, on his checking account in appellant bank. Each warrant showed on its face that it was issued on the Duncan Road fund, and those for the sums of $240, $4,080 and $1,370.56 were drawn to the contractor and appellant jointly.

No part of these sums of money, all of which were received by appellant bank, was applied to the payment of its debt against the contractor, Huffman, but all of these sums were by appellant passed to the credit of Huffman on his checking account and by him checked out.

There is nothing whatever in the special findings to show that any of the moneys loaned by appellant to the contractor, being the proceeds of the above-mentioned notes, nor any part of the proceeds of such estimates, was ever used by the contractor in payment for any work, labor, or materials, nor in payment of any debt contracted by the contractor in the construction of the Duncan Road.

So far as appellant bank is concerned, as shown by the special findings of fact, it was a mere volunteer so far as the funds in question are concerned, and was nothing more than a general creditor of the contractor. The application of Huffman to the surety company for the bond executed by it as surety contains an assignment of these funds to the Southern Surety Company, antedating the assignment to appellant bank.

The court, on its finding, stated certain conclusions in favor of the claimants to the fund, who had furnished labor, work and materials for the construction of the road, and rendered judgment on such conclusions that their claims be paid out of the fund; it further stated conclusions that certain claimants were not entitled to any part of the fund, but rendered judgment for these

claimants against Huffman, the contractor; it also stated conclusions of law that what remained of such fund after payment of claims as aforesaid, to wit, $345.10, should be paid to appellant on its assignment, and rendered judgment accordingly. No judgment except for costs was awarded to appellee surety company, nor against it on its bond. No appeal except that of appellant was taken from the judgment.

The question presented for our decision by exceptions to the conclusions of law is whether or not appellant is entitled to all of the fund in question, amounting to $2,478.64, or to a greater part thereof than was awarded to it, as against appellee surety company and the several claimants thereto for work, labor and materials furnished by them respectively in the construction of the road.

Appellant presents that the surety company is not interested in the controversy, because none of the claimants had strictly complied with Acts 1925, ch. 44, but the case must be affirmed regardless of this question, and we, therefore, do not need consider this point.

It is expressly provided in this contract that if, upon satisfactory evidence being given the board of commissioners, any workman, subcontractor, or person furnishing any labor or material for the work is not being paid for the work or material according to the agreement therefor with him, *then the board shall pay for such labor or material out of the proceeds of the sale of the bonds or other funds due or receivable by the contractor under the provisions of the contract,* or the bond executed therewith. It is clear that the labor and material claimants were entitled to the protection of this provision of the contract, which was a valid contractual stipulation, whether they had complied with the provisions of the statute or not. Such provisions in the contract gave the claimants a remedy in addition to that given by the statute, by raising an equity in the fund in

favor of the claimants against the funds yet in hand, and, we may add, in favor of the surety in the event it had needed it for its protection.

In *Salt Lake City* v. *O'Connor* (1926), 68 Utah 233, 249 Pac. 810, 816, 49 A. L. R. 941, the contract there involved contained a stipulation similar to the one in this contract, and, in that case, as here, there was a failure by the contractor to pay for material used in the work with a balance of funds left in the hands of the city, and the court, speaking with reference to the right of the surety, said: "We conclude that the unpaid contract price remaining in the hands of the city is charged with an equity in favor of the surety, which arose by virtue of the retention of the fund by the city and in point of time relates back to the time the contract of suretyship was entered into, and is superior and paramount to any right of the contractor or his assignee.

"The fund in question being charged with this equity, the assignment to the bank only transfers the contractor's interest therein, subject to the right of the surety. If the contractor was in person claiming the fund against the surety, no court would entertain his claim. His assignee has no larger right. The assignment transferred to the bank merely the contingent right of the contractor which might remain after all prior claims had been satisfied. This equity of the surety entitles it to be subrogated to the fund in question to the extent of its interest, which in this case, as before seen, extends to the whole of the fund."

The principle applies with equal force to the rights of the material and labor claimants herein, which rights and equities are supplemental to, and are in no way taken away by, the statute permitting laborers and materialmen to file claims against the fund, and to sue the surety upon complying with the statute. Under such provisions, it is clear that the court

had authority to apply the fund directly to the payment of the claims without first requiring the board of commissioners so to do.

After the assignment to the bank of $4,000 of the construction funds, it loaned to the contractor a total of $4,000, after which it received estimates from time to time, which were made by order of the board, in the total sum of $9,914.56. These estimates so paid to the bank from time to time were deposited to the contractor's checking account. Had appellant bank, as was its duty, applied this collateral fund so received by it from time to time to the discharge of the contractor's indebtedness to it, such debt would have been fully paid and discharged, and, failing so to apply it, it waived its right, if any it had, to the assignment of the funds as a collateral security, as against the rights of the labor and material claimants to the fund. *Southern Surety Co.* v. *Merchants & Farmers Bank* (1928), 161 N. E. (Ind. App.) 842.

Clearly, the rights to the fund of the labor and material claimants are superior to the rights of the bank. The court did not err in its conclusions of law.

Judgment affirmed.