## DETROIT FIDELITY & SURETY CO v KEYS et

Ohio Appeals, 2nd Dist, Montgomery Co

No 1112.  Decided July 21, 1932

E. H. and W. B. Turner, Dayton, Mills & Fowler, Dayton, and Herbert D. Mills, Dayton, for plaintiff in error.

L. H. Mattern, Dayton, for receiver.

Craighead, Cowden, Smith & Schnacke, Dayton, for the Winters National Bank & Trust Co.

HORNBECK, J.

With the record in the state, heretofore briefly set forth, the parties by their counsel appeared in open court and there developed the occurrences upon which the controversy of the parties arises. Much informal discussion had taken place before a definite plan of action was agreed upon but finally, at the suggestion of the trial court, general demurrers' to the intervening petition of the Surety Company were filed by the receiver, the Bank and the Pittsburgh Plate Glass Company. The record will bear the interpretation, that the court was of opinion that he was determining questions incident to an order of distribution arising upon the statement of facts of counsel, and it is not at all unusual, that he would believe that he had by agreement of counsel determined these questions finally by his action on the hearing. However, we cannot escape the force and effect of the journal entry through which the court speaks and it is decisive that the action taken was a decision on the demurrers to the intervening petition of the surety company. The language of the entry:

"This day this cause came on to be heard upon the several demurrers of the receiver, the Pittsburgh Plate Glass Company and The Winters National Bank & Trust Company to the intervening petition of the

Detroit Fidelity & Surety Company, and the same was submitted to the court;

Upon consideration, the court finds that said demurrers are each and severally well taken and should be sustained, which is accordingly hereby done. Said surety company's intervening petition is hereby dismissed; to all of which said The Detroit Fidelity & Surety Company, by its counsel, excepts."

The error proceedings and the record which was made upon the hearing on the general demurrers to the original intervening petition require us to decide if the action of the trial court in sustaining the demurrers was correct.

The petition of the Surety Company, in so far as pertinent here, relied upon the averments that the receiver was appointed without notice to the Surety Company and that no notice was given to the Company of the default of the Contractor in completing its contracts and that, under its contract with the Contractor and because of his default the Surety Company was entitled to an equitable lien on funds assigned to it prior to the receivership proceedings, and, further, that the Bank was not entitled to an equitable lien on said funds nor to priority of lien over the Surety Company.

Assuming that the appointment of the receiver worked an involuntary default of the Contractor on its contract with the State, we do not believe that a failure of the Director of Highways to notify the Surety Company of such default, as provided by §1209 GC, nor the failure to notify it of the appointment of the receiver, would under the averments of the intervening petition create an equitable lien in favor of the Surety Company on any money due or to become due the Contractor on its construction jobs. The amended intervening petition is much broader than the original intervening petition in setting out the facts and the conditions of the contract between the Surety Company and the Contractor, especially the assignment clause as a basis for subrogation and exoneration. The demurrers to the intervening petition were properly sustained.

Within ten days after the decision on the demurrers the Surety Company filed an amended intervening petition with the Clerk, as a matter of right, and at the same time a motion for leave to file an amended intervening petition.

Motion to strike the amended intervening petition was filed by the Bank and after counsel for the Surety Company had withdrawn its motion for leave the court sustained the motion to strike. Exceptions were noted to the action of the trial court in striking the amended intervening petition. In the entry upon the motion to strike, in part, the court finds that the claims of said Surety Company and the Bank were determined upon their merits by the former orders of the court on November 19, 1931, and that the rights and claims of said parties were thereby adjudicated and that "the motion to strike said intervening petition should be and is hereby sustained." Judgment was entered accordingly.

The recitation in the second entry, just quoted, to the effect that the amended petition was ordered stricken because the matter set up had been theretofore determined on its merits as disclosed by the record, cannot control against the express terms of the journal entry reciting that the former action was merely a sustaining of the demurrers.

We are convinced that the court erred in determining that the action taken in the hearing of November 19, 1931, as exemplified by the journal entry, was a determination of the right of the Surety Company upon the merits.

It is not necessary to say that the learned trial court well knew the office of a motion to strike and that before trial had judicial discretion required a favorable attitude toward permitting an amendment to a petition so long as it is substantial, tendered in good faith with a purpose to state a cause of action. This discretion was not exercised because the court was convinced that the motion came too late after judgment.

Counsel have thoroughly presented their respective claims of the law of this case on the action of the court in sustaining the motion to strike treated as a general demurrer to the amended petition. The motion was not so considered below. Nor does the action there taken present a situation where after adverse ruling the losing party desiring to plead no further reserves the error assigned and permits judgment to be entered against him.

It is the further claim of plaintiff in error that the court erred in ordering the amended intervening petition stricken from the files because the Surety Company had a right by law, under §§11360, 11361 and 11365, GC, to file the amended intervening petition.

Sec 11360, GC, provides:

"At any time before the answer is filed plaintiff may amend his petition without leave or prejudice to the proceeding. Notice of such amendment shall be served upon the defendant or his attorney."

Sec 11361, GC, provides:

"Within ten days after a demurrer is filed the adverse party may amend, without leave, on payment of costs since filing the defective pleading."

Sec 11365, GC, provides:

"If the demurrer be sustained the adverse party may amend if the defect thus can be remedied with or without costs as the court directs. It shall be no objection to such amendment that it changes the action from law to equity or vice versa, if its basis, essential facts and final object remain the same."

We are met at the outset with the necessity of construing §§11360, 11361 and 11365, GC. It appears that the Surety Company withdrew its motion for leave to file its amended petition, filed in the Common Pleas Court, and elected there to stand upon its right to file independent of leave of the court. It maintains its right so to do in this court. To support its position we are cited to the foregoing sections.

Although the trial court erred in the reason assigned for sustaining the motion to strike, if the action taken was proper, though founded upon an untenable reason, it must be supported. If the Surety Company had the right to file its amended intervening petition then it may have been prejudiced by the court striking it from the files although it was not good on demurrer because it had the further right within the discretion of the court to amend and to attempt to state a cause of action. Further, the amended intervening petition challenged the validity and priority of the claim of the Bank as an equitable lien and, if the finding of the court fixing the rights of the Bank was an interlocutory order the Surety Company had the further right to have that question adjudicated as between it and the Bank. Kelley et v Stanbery et, 130, 421 N.C. Conville v Lee, 31 Oh St, 451.

Unless the Surety Company had the right independent of leave to file its amended petition it cannot be heard to complain of the action of the trial court because the court was not called upon to exercise its discretion whether or not the amended petition should be filed.

Sec 11361, GC, can have no application because the amended petition was filed eleven days after the filing of the demurrer. The time limit fixed in the section is ten days. §11360, GC, standing alone, would authorize the filing of the amended petition "at any time before the answer is filed;" no answer was filed. But this section must be considered in conjunction with §11365, GC, which clearly contemplates leave of the court to file an amended petition. Hence, there arises an apparent conflict and inconsistency in the terms of the sections. They must be construed in pari materia. The necessity of leave of the court to file an amended petition appears in two particulars in §11365 GC: (1) "If the defect thus can be remedied." (2) "With or without costs, as the court directs." Neither of these questions can be determined without discretionary action on the part of the court.

Although the question must have arisen many times in procedural practice in Ohio, we do not find an adjudication on the subject. We are agreed that reading the sections together, §11360 GC has application only where, after the filing of the original petition and prior to the filing of an amended petition, no action of an opposing party has intervened challenging the sufficiency of the petition; that §11365 GC is exclusive, and controlling after demurrer has been filed to a petition and has been sustained. Thus, no amended petition can be filed as a matter of right after demurrer thereto has been interposed and sustained by the court. This is the only intepretation which will give full scope and effect to all of the language of §§11360 and 11365 GC. As there was no leave of the court the Surety Company had no right independent of leave to file the amended intervening petition, it was filed without authority of law. The court was, therefore, correct in sustaining the motion to strike it from the files.

In this view of the case it becomes unnecessary to consider the further question, extensively briefed by counsel, raising the sufficiency of the amended intervening petition against a motion to strike treated as a general demurrer. The event which would require the trial court and this court to pass upon this question would arise if leave had been invoked under §11365 GC which action was not sought by the Surety Company.

The judgment of the trial court will be affirmed.

The motion of the Bank to dismiss the error proceedings will be overruled.

ALLREAD, PJ, and KUNKLE, J, concur.

## ON MOTION FOR REHEARING

Decided Aug 25, 1932

HORNBECK, J.

Submitted on rehearing granted on application of plaintiff in error.

The first ground of the application is based upon the claim that the court was in error in finding that §11361 GC had no application because the amended intervening petition was filed eleven days after the filing of the demurrer, while the time fixed by the statute within which the amended petition may be filed is but ten days. We were in error in the statement respecting the time within which the amended petition was filed. The period which we computed was the number of days between the filing of the petition and the amended petition of plaintiff in error.

We said in the former opinion in this case:

"That §11365 GC is exclusive and controlling after demurrer has been filed to a petition and sustained. Thus, no amended petition can be filed as a matter of right after demurrer thereto has been interposed and sustained by the court."

If correct in this conclusion, §11361 GC has no application to accord to plaintiff the right to file its amended petition, though done within ten days after demurrer filed to the petition. We are satisfied that this is the correct interpretation. **The Ohio, Indiana and Kentucky Heater Co. v Shafer, 19 Oh Ap**, 399 is not in conflict with our conclusion as there no pleading to the petition had been filed before the amended petition was filed.

Second, it is claimed that in passing upon the motion of the Winters National Bank & Trust Company to strike the amended petition of plaintiff in error, the trial court was called upon and did exercise judicial discretion in determining the matter. When writing the former opinion we felt certain that the plaintiff in error was resting upon its right to file the amended intervening petition independent of leave. A more in-tensive study of the record indicates that, it is probable that the motion for leave to file the amended petition was presented to the court and passed upon.

The transcript of pleadings and journal entries discloses the following:

The motion for leave to file the amended intervening petition was filed November 20, 1931. Refiled November 28, 1931, 10:24 A. M. On edge of the motion this notation appears in ink hand written: "Withdrawn by consent, November 28, 1931." Whether the motion was withdrawn before or after its refiling does not appear. If the motion was withdrawn on the 28th of November after its refiling, then it would not have been before the court when the action was taken which appears in the entry of December 4th to which reference is hereafter made. If the withdrawal relates to a time before its refiling on November 28, 1931, then it was before the court when the ruling was made as shown by entry of December 4, 1931. Notice of filing amended intervening petition pursuant to §11361 GC was filed November 21, 1931. Motion to strike amended petition was filed November 25, 1931. Notice that amended intervening petition had been filed pursuant to §11360 GC was filed December 3, 1931. Motion to strike this amended petition was filed December 5, 1931. Entry sustaining this motion was filed December 23, 1931.

The entry of December 4, 1931, disposed of everything, heretofore set forth, filed prior to December 3, 1931. It is interesting to note that at the time of consideration of the subject matter appearing in the entry of December 4, 1931, the only motion to strike appearing in the record was based upon the claim that the amended petition **was filed without leave of court** and that there had been an adjudication of the case upon the merits. But the entry of December 4, 1931, may be reconciled with the claim of plaintiff in error and its recitation of the subject matter before the court, and the action taken thereon is controlling. So much thereof as is pertinent reads:

"This day this matter came on to be heard upon the motion filed herein by L. L. Mattern as receiver of J. T. Smith, Inc., and the Winters National Bank & Trust Company to strike from the files the amended intervening petition filed herein on November 21, 1931 by The Detroit Fidelity & Surety Company, as of right, the said surety company having withdrawn the motion heretofore filed herein by it for leave to file such amended intervening petition, and was

argued by counsel and submitted to the court."

The court then sustains the motion to strike the amended intervening petition. Then follows:

"Said The Detroit Fidelity & Surety Company having thereupon refiled its motion for leave to file said amended intervening petition, and counsel for the receiver, for said surety company, and for said bank having agreed to an immediate hearing upon said motion, which the court granted, said motion for leave to file said amended intervening petition was argued by counsel and submitted to the court."

This motion was then overruled.

We are therefore constrained to say that the court was called upon to determine as upon motion for leave the right of the plaintiff in error to file its amended intervening petition. This presents another and different question than was decided in the former opinion, namely, the right of plaintiff in error to file its amended petition without leave and by virtue of §§11360 and 11361 GC.

The further question then for our determination is whether or not plaintiff in error was prejudiced by the action of the trial court in sustaining the motion to strike the amended intervening petition from the files. We said in our former opinion:

"If the surety company had the right to file its amended intervening petition then it may have been prejudiced by the trial court striking it from the files although it was not good on demurrer because the surety company had the further right within the discretion of the court to amend and to attempt to state a cause of action."

If in this situation the plaintiff in error desired to tender a second amended petition determination of the good faith of the pleader as well as the sufficiency of the pleading was peculiarly for the trial court, and a power which this court on error does not have.

We might say that the amended intervening petition does not state a cause of action and, therefore, would not be good as against demurrer, but this would not assure to the plaintiff in error the further right to plead, if desired. The denial of this right in this case was in our judgment prejudicial to plaintiff in error requiring the remanding of the cause.

We might be content to rest our opinion here, but further considering the amended intervening petition in its most favorable aspect to the plaintiff in error, which we are required to do, as upon demurrer, we believe it discloses equities in the plaintiff in error which the trial court, in its discretion, could recognize. At the time that this pleading was brought to the attention of the trial court the money which was the subject of dispute and which had been theretofore ordered paid to the bank was in the hands of the receiver unexpended. The Surety Company if the trial court recognized its equities, had the further right to a determination of its priority of lien as against the Bank. The impracticability of this court undertaking to determine upon the state of the record the law of a controversy which may properly be framed between the bank and the Surety Company is evident. For instance in the discussion between counsel and the court at the hearing as appears in the transcript of testimony, something was said about the knowledge which was brought to the attention of the surety company of the appointment of the receiver and his subsequent actions in the case. Laches on the part of the surety company, if any, as affecting its right to assert its equities against the bank is not properly in issue and can only be safely raised and determined in the trial court. Likewise the admissions in the record can only be considered as upon the hearing on demurrer.

If the bank relieved the Surety Company from any part of its obligation on the bonds and by reason thereof, to what extent equity should protect it in preference to the surety, is the subject of evidence which the trial court can take upon issue joined and upon which determination can be made.

We are considering this case upon a motion to strike the amended intervening petition from the files treated as a general demurrer not as upon a determination on the merits. The question then is: does the amended petition cure the defect in the original petition, i.e: state a cause of action for any relief whatever.

We are not faced in this case with any danger of the Statute of Limitations running against any claim nor of the State being embarrassed by any action of the trial court. The equities in each case rest upon the facts in that particular case and it is in this light that the averments of the amended intervening petition must be considered.

The detailed and comprehensive briefs of

counsel for the parties devote much space to the doctrine of subrogation and exoneration. Plaintiff in error insists that the cause pleaded brings it within the application of these doctrines and the other briefs are to the contrary.

We are convinced that the averments of the amended intervening petition are insufficient, if true, to require the court to apply in behalf of the Surety Company the doctrine of subrogation. The amended petition at no place avers that it has paid or is bound to pay any obligation of J. T. Smith, Inc. because of its liability as surety for Smith, Inc. upon its building contract. A careful examination of the authorities on the subject of subrogation is convincing that the great weight thereof requires a surety who claims its protection, either, to make payment, or, to be bound to make payment of the debt of its principal for which it is bound as surety. Neither line of cases is broad enough to include the status of the Surety Company as it appears in its amended petition. It is said in 25 R.C.L., 1315,

"It is not a liability to pay, but an actual payment to the creditor, which raises the equitable right to subrogation."
"Subrogation only exists in favor of those who are bound to pay the debt."
Harris v Bislande (La.) 204.

"The doctrine has been exclusively directed to the relief of those who were already bound, or could not but choose to abide the penalty."
Gadsten v Brown, Spiers Eq. 37-41.

Annotation to Krumlislis, Admr. v Central Improvement Company, 1 L.R.A., 127. 50 C.J., 244, American Bonding etc. Company and Logansport, etc. Gas Company, 95 Federal 49.
Annotation to Saunders v Saunders, 71 A.L.R., 354.
Gilbertson v Northern Trust Company (N.D.) 42 A.L.R. 1359, 14 R.C.L., 58, 20 Ohio Jur., 614.
The oldest case in Ohio dealing with the subject of equitable subrogation is that of Stump v Rogers et, 1 Ohio 533, the syllabus:

"Security may proceed against principal in equity to have his estate subjected to the payment of the debts, without making payment himself before commencing his suit."

This, however, was a case wherein the positive liability of the surety had been fixed by judgment against him but he had made no payment of any part of the debt of his principal. Following this case are: McConnell v Scott et, 15 Ohio 402; Clark & Clark v Kensell & Snyder, Wright 480; Hale, Exr v Wetmore et, 4 Oh St 600; Barbour v National Exchange Bank, 45 Oh St 139; Bank of Montpelier v Mullen et, 7 C.C. (N. S.) 330. In all of the foregoing cases the liability of the surety was fixed before action brought.

We have examined the cases cited by counsel for plaintiff in error, Salt Lake City v O'Connor et, (Utah) 249 Pac. 810. This case in many particulars parallels the instant suit but unlike it, in the O'Connor case there was both a payment by the surety of the obligation of the principal and an admission of further liability. This is found at page 814 in the opinion of the court, as follows:

"It was admitted that the surety had paid $3490.86 to persons not parties hereto, on account of labor and material furnished for the contract in question, and that there was over $20,000 due for material to the materialmen herein, for all of which the surety was liable."

Perry State National Bank of Chicago v U. S. and U. S. v Hitchcock et, 164 U. S. 227. In this case the surety had taken over the building contract upon which the principal had defaulted and had paid the cost of completing the contract which amounted to about $15,000 in excess of the current payments from the government. Neither the facts nor the law in Walker v Brown, 165 U. S. 654 are, in our judgment, helpful in the situation presented.

Likewise, in Pratt Lumber Company v T. H. Gill Company, it will be observed that the assignment clause in the contract for bond of the Surety Company is different and broader than the assignment clause pleaded in the contract of plaintiff in error. This appears at page 794 of the opinion. At page 795 the court in its opinion states the difference between the case there presented and our question:

"The Surety Company, for the purpose of this discussion, concedes its liability for the amount due them as found by the special master."

Our attention is directed to the decision of Judge Snediker in Zimmerman v The People's Oil Company defendant No. 66915 Common Pleas Court, Montgomery County, January 26, 1932 and a copy of the opinion

in full is attached to the brief of plaintiff in error. We have no difference with the conclusion of Judge Snediker in this case. In the last analysis he only has done that which we say the trial court may do in this case.

The quotation from Lawrence on Equity, See 902 in the opinion, is broader than the cases cited support. Substantially the same statement and citing most of the same cases, is found in 21 R.C.L., 1110.

We have examined the greater number of these authorities and find that they go no further than the Ohio cases which we have discussed.

Some of the cases heretofore cited are based upon exoneration instead of subrogation but none found will on the facts plead support the relief sought by plaintiff in error.

But there is a third question set up for the first time in the amended petition, to consider, namely: the effect of the assignment clauses in the written contracts for bonds between the Surety Company and Smith, Inc.

The Surety Company in its amended intervening petition, in part, pleads:

"Each of which agreements provided in material part that the said principal, J. T. Smith, Inc. then and there assigned to the said surety, the Detroit Fidelity & Surety Company, as assignee of the said J. T. Smith and duly transferred and conveyed to the Detroit Fidelity & Surety Company all deferred payments, retained percentages, and any and all moneys and properties that might be due and payable at the time of any breach or default of the said J. T. Smith, Inc., or that might thereafter become due and payable to the said J. T. Smith, Inc., on account of said contracts, or on account of any extra work or materials supplied in connection therewith; and the said J. T. Smith, Inc., by the terms of said indemnity and assignment agreements thereby agreed that all such moneys and proceeds of such payments and properties should be the sole property of the Detroit Fidelity & Surety Company and to be by it credited upon any loan, cost, damage, charge and expense sustained or incurred by it as upon said bonds of surety."

This is an assignment by specific provision, independent of any equitable rights of subrogation which the surety might have, upon default of the contractor, of all estimates due or to become due if the surety sustain any loss by payment of its obliga-

tions on the surety bonds. The Surety Company further recites its positive obligation by the terms of the bonds to pay all lawful claims of sub-contractors, materialmen and laborers for labor performed and material furnished in the carrying out, forwarding, performing or completing each of said contracts; the filing with the intervening petitioner of claims of laborers and materialmen on the construction jobs, in the sum of $11,154,31, and the institution of suits by materialmen against the intervening petitioner in three counties of the State of Ohio for sums aggregating about $4000.00 and that other suits of like character are threatened in Montgomery and other counties of the State of Ohio; that the surety has incurred obligations, costs, damages, charges and expenses under said bonds upon the making of due and legal proof of claims thereof, and avers that there is a probability of liability upon the claims filed with it and law suits filed against it.

Was there a breach or default under the contracts between the Surety Company and Smith, Inc. or under §1209 GC? We believe it probable that Smith, Inc. defaulted on its contracts when construction of the bridges was interrupted by the naming of the Receiver. This act resulted in an involuntary default on the part of Smith, Inc., and though there was little interruption in the progress of the improvement and it was carried forward by an officer of the court acting on behalf of Smith, Inc. it was not Smith, Inc. but a different entity. Thus, there was a default under the statute and the conditions of the contracts for bond between the Surety Company and Smith, Inc.

As to the principal sums set forth, i.e.: the claims presented to the Surety Company and suits instituted against it, it is not asserted that any payment has been made and liability is not admitted; therefore, the doctrine of subrogation or exoneration can not be said to apply. But the import of the assignment clauses would seem to be that they became effective upon default of the contractor, whether or not at that time the surety had actually sustained any loss by reason of payment of the obligation of its principal by the terms of the bonds to the State of Ohio. Whether or not these clauses became effective immediately, upon broad, equitable principles the trial court has the right, within reasonable discretion, inasmuch as the fund to be distributed is still in the possession of its officer and receiver and there is strong probability of heavy liability on the

surety bonds, to impound this fund for a reasonable time until it appears whether or not actual expenditure will be required of the Surety Company. It may be that at this time, inasmuch as months have elapsed since this case was presented to the trial court, the Surety Company has been called upon to pay claims for which it is liable under its bonds. Briefly restating our conclusions we hold:

1. That plaintiff in error had no right, independent of leave, to file its amended intervening petition by reason of §§11360 or 11361 GC; that §11365 GC is exclusive and controlling and leave of the court is a prerequisite under this section.

2. That in any event plaintiff in error was prejudiced by the action of the trial court in sustaining the motion to strike the amended intervening petition from the files and entering judgment against the Surety Company because the Surety Company was thereby denied its right, if desired, within the discretion of the trial court, to file a second amended intervening petition.

3. That the amended intervening petition does not state a cause of action entitling it to immediate relief upon the basis of subrogation, exoneration, or indemnification.

4. That under the strict terms of the assignment clauses of its contracts with Smith, Inc. the surety upon default of Smith, Inc. as between them was entitled to the money due or to become due on estimates on the jobs.

5. That the Surety Company in its amended intervening petition does state facts, namely: the default of the contractor under the terms of its contract with the Surety Company and under §1209 GC and probable liability in a considerable sum on its contractor's bonds to the State of Ohio which would authorize the trial court, in its discretion to impound the fund in the hands of the receiver for a reasonable time until it is determined whether or not positive liability of the Surety Company will ensue.

6. That the validity and priority of the lien, if any, of the bank as against any lien which the Surety Company may have on the fund can be determined upon issue drawn and trial had.

The action of the trial court will therefore be reversed and the cause remanded for further proceedings according to law.

ALLREAD, PJ, and KUNKLE, J, concur.