BAIN-NICODEMUS, Inc., v. A. F. BETHAY et al.—292 S. W. (2d) 234.

Western Section, Jackson. October 7, 1953.

Petition for Certiorari denied by Supreme Court, December 11, 1953. Rehearing denied, February 11, 1954.

George P. Douglass, Memphis, for complainant.

David Ballon, J. G. Farrar, John M. Boggan, Richard H. Allen, H. H. McKnight, Warner Hodges and John H. C. Lang, Memphis, for defendants.

AVERY, J. This is a suit by Bain-Nicodemus, Inc. vs. A. F. Bethay et al. in the Chancery Court of Shelby County by which the complainant, the appellant here, sought to recover a judgment of $1,177.28 against A. F. Bethay, and to have a mechanics and furnishers lien for that amount fixed upon the property of John Botto and wife, Delfina Botto and have the property sold in satisfaction of the lien.

Bethay was a building contractor and had contracted to construct a dwelling for Botto and wife on the lot described in the original bill, being Lot No. 8 of the Hill and Fontaine, Brooks Avenue Subdivision by Plat of record book in Plat Book 8, page 117 in the register's office of Shelby County, then designated as No. 3518 Fontaine Road, at a contract price of $11,000. Immediately prior to that date he had under construction an apartment building located at 972 North Dunlap Street in the City of Memphis for one Grusin. He had purchased some of the material for this Grusin job from the complainant and owed complainant between three and four thousand dollars on October 19, 1951, just prior to the beginning of the construction of the Botto dwelling.

To the bill as filed Bethany answered and the defendants Botto and wife filed an answer and a cross-bill, the cross-bill being in the nature of a general lien holder's bill with respect to their property and after due process all the lien holders on the Botto job came in and filed their response.

Thereafter the Chancellor referred the matter to the master directing him to report on certain items, only two of which need be referred to; one being the balance if any due each of the cross-defendants on lien claims for labor and material furnished by them in the construction or improvements of the John Botto and wife property hereinabove referred to. The other pertinent reference was whether or not payment of $750 on October 20, 1951 by Bethay to complainant Bain-Nicodemus, Inc. was paid on his general account with it or was to be applied as credit on his bill for purchase of material for construction and improvements for the Botto property.

During the pendency of this case Bethay was adjudged a voluntary bankrupt in the United States District Court at Memphis, Tennessee, apparently received his discharge and in the final decree the Chancellor dismissed the original bill and all cross-bills as to him.

The Master reported that complainant Bain-Nicodemus, Inc. had a material furnishers account due by A. F. Bethay on the Botto job of $1,177.28, constituting a lien against the Botto property and he further reported that the $750 paid by defendant Bethay to Bain-Nicodemus on October 20 was not designated at the time of payment to be applied to the Botto job account.

Bain-Nicodemus, Inc. had credited that $750 payment to Bethay's general account or his account which had

been incurred by virtue of materials furnished him for the Grusin job.

The defendants, Botto and wife, excepted to the report of the Master with respect to this particular item of $750 and exceptions were heard before the Chancellor. As to this item the Chancellor sustained the exceptions with respect to the $750 payment on October 20, 1951, allowed it as a credit against the $1,117.28 and leaving a balance of $427.28 allowed as a lienable claim against the Botto property to that extent.

Bain-Nicodemus excepted to the decree of the Chancellor, prayed and perfected its appeal to this Court.

The appellant filed what it designated as four assignments of error. The first three raise the question of the proper application by Bain-Nicodemus, Inc. of the $750 paid by Bethay on October 20, 1951, contending that it had a legal right to apply that payment to the account then owing it by Bethay for material furnished by it for the Grusin job.

■■ The fourth assignment of error raises the question only of an error in the decree apportioning the cost of the cause between the parties. The court had taxed one third of the cost against complainant Bain-Nicodemus, Inc., one third against Botto and wife, and one third against the other like claimants jointly. The adjudication of costs is a matter in the sound discretion of the Chancellor and there appears to be no abuse of that discretion in this cause. Therefore, the fourth assignment of error is disallowed. Code of Tenn. 1932 sec. 9116; Town of Erin v. Brooks, 190 Tenn. 407, 230 S. W. (2d) 397.

In support of its first three assignments of error the plaintiff contends that (1) at the time Bethay made the payment of $750 to-wit on October 20, 1951, he then owed complainant between three and four thousand dollars for material previously furnished by it to Bethay for use in the construction of the referred to Grusin job at 972 North Dunlap Street, part of which indebtedness was then past due, and that Bethay owed nothing for material subsequently furnished to the Botto job; (2) that it had requested Bethay to make a payment on his past due account and that when such payment of $750 was made to it, Bethay did not request it to apply such payment on the building material he expected to purchase for the Botto job, and that complainant had a right to apply the payment to the indebtedness then owing; (3) that after having credited said payment of $750 to the account of A. F. Bethay, then due and owing it for building material furnished to him for use in the construction of the building for Mrs Leon Grusin, which was a lienable obligation, she, Mrs. Grusin, became an interested third party to the transaction and that complainant could not thereafter transfer such payment so appropriated without the consent of Mrs. Grusin, and to have done so would have been inequitable.

On the other hand it is contended by the defendants (1) that at the time A. F. Bethay paid complainant the sum of $750 on October 20, 1951 he designated, as he had a right to do, that it was to be applied on the bill for material to be furnished in the construction of Botto's home on Fontaine Road, and (2) that if the Court should find that no designation was made, the complainant knew the course of the funds ($750), that it was money furnished Bethay by Botto and wife, and that equity and

good conscience require the application of the payment of the $750 to the account for materials furnished for use in the construction of the improvements on the property of the Bottos.

This Court is, therefore, faced with the duty of determining the facts of this case, as outlined in the contentions of the parties, the hearing being de novo in this Court.

With respect to this particular item of $750 paid by Bethay to Bain-Nicodemus, Inc., as shown by the Chancellor's decree, he did not designate either of the direct contentions of the Bottos as the foundation for his decree, and we are unable to say that he so decreed because he found that Bethay had directed the application of that payment to the Botto account or whether Bain-Nicodemus knew the source of the fund which made up the $750 payment and, therefore, equity and good conscience required them to give the material bill for the Botto dwelling credit with that payment. It is true that the Clerk and Master, in his report on his order of reference definitely reported that there was no designation by Bethay of that payment at the time it was made on October 20, 1951, and the Chancellor sustained the exceptions to that part of the report. As to this item the Court's decree is as follows:

"The court, therefore, finds that the $750.00 paid by the defendant, A. F. Bethay, on October 20, 1951, should be credited on his account with it for materials purchased for the construction of improvements on the Fontaine Road property of said defendants Botto described in the Original Bill. That the claim of Bain-Nicodemus, Inc. should be and it is reduced

from $1177.28 by said credit of $750.00 to the sum of $427.28 and is allowed as a lienable claim only to such extent." (Final Decree, Tr. 138-139)

If the Chancellor meant, by his decree, to strike down the credit by Bain-Nicodemus to its then due account of the payment of $750 on October 20, 1951, because Bethay had directed its application, we cannot agree with such finding. The circumstances under which the payment was made, the testimony of the witness Bain, Shinn and Webb, though at some points appearing to be of a negative type, together with the facts gleaned from exhibits filed by Bethay to his testimony, overcome the positive swearing of Bethay, who is the only witness testifying to the fact that he had requested Bain-Nicodemus to apply that amount to the payment for the material contracted by him for the Botto job.

Some of the circumstances are as follows: (1) The check dated October 20, 1951 for $750 has nothing on it to indicate that the payment was to be credited to any future account. See check photograph following page 71. (2) The receipt dated 10-20-51 given by Bain-Nicodemus to Bethay for $750, signed by "Webb", Exhibit 2 to the disposition of Mr. Shinn has printed thereon four spaces to show the type of payment evidenced by such receipt. Printed in the separate spaces are the following words,

"Advance Pay, Partial Advance, C. O. D., Account".

Beneath each of these above quoted designations is a square so that the receipt may be checked showing to what kind of an account the payment has been credited. The square under the word "Account" is checked, and nothing appears in either of the other three squares.

(3) The letter dated December 18, 1951, carbon copy of which is Exhibit 1 to the cross examination of Bain and Exhibit S to the deposition of Bethay, signed "A. F. Bethay Bethay Construction" and addressed to Bain-Nicodemus Lumber Company, by which Bethay was requesting a receipt showing that the $750 paid on October 20, has no statement whatever showing that Bethay directed that payment to be applied to the Botto job account. On the other hand it is simply a request for a receipt or statement "showing the $750 in which I paid you on my account has been transferred from the Dunlap job to the Fontaine job." (4) The letter written by Bethay to Mrs. Botto, dated October 16, 1951 and Exhibit A to Bethay's testimony, shows that the contract has been consummated between him and Botto on October 16, 1951, a day or two before he contacted Mr. Shinn with respect to the material to be furnished on that job, indicating very clearly that he was not obtaining an estimate on the mill work from Mr. Shinn so as that he might know whether he desired to consummate the contract or not. (5) No material had been furnished by Bain-Nicodemus at that time to the Botto job. The first charge of material to the Botto or Fontaine Road job appears to have been made on November 14, nearly one month after the payment of the $750 in question.

A careful examination of the testimony of Mr. Shinn, both direct and cross, is to the effect that Bethay did not tell him or Webb to show a credit of the $750 to the Botto account. In several places he made very positive answers. He was asked:

"Q. Isn't it true he (meaning Bethay) stated to you on the 19th that he was going to make a payment

to you on the next day to be applied to the mill work used on the Fontaine Street job?

"A. No, we wanted money on the Dunlap job. He was paying on open account and naturally we would credit a payment on the oldest account." R. 42.

The witness was being interrogated about a telephone call from Bethay some time after this payment was made, in which Bethay was then requesting that the $750 be credited to the Botto job. He was asked the question:

"Q. How did he (meaning Bethay) know you had credited it to the Dunlap job then?

"A. He didn't designate any job, and as I stated, naturally on an open account like that, we would credit the payment to the oldest account." T.R. 43.

Again, when he was being cross-examined further in connection with his right to accept money in advance he made the following statement:

"He didn't say anything about it being credited to any specific job. At that time we hadn't sold him anything for the Botto job." R. 46.

Again on re-direct examination he was asked the question:

"Q. Did Mr. Bethay make any request of you when he made the $750 payment?

"A. He did not."

The witness Webb testified that he made out the receipt dated October 20, 1951 for the $750 paid on that date by Bethay. That receipt is identified as Exhibit 2 to the testimony of Mr. Shinn. The witness Webb was asked the direct question:

"Q. State whether or not at the time this payment was made if Mr. Bethay requested you to apply that to any particular account.

"A. He did not, sir, for the reason that had such a request been made, that would have been entered on the receipt. It would have been applied as he suggested if he had made any request. These receipts were made out in duplicate and the original was given to the customer and the copy kept for our records. At a later date, the copies were given to the customers and the originals kept by our company for our records. If any check or anything crossed my desk or any request was made for any payment to be applied to any specific account, that request was entered on the receipt itself."

Bethay positively testifies that at the time Shinn was calculating the cost of the mill work for the Botto job he was requested by Shinn to make some payment, and that he thereupon told Mr. Shinn that he would have to see Mrs. Botto first; he went to the telephone in Shinn's office and called and talked to Mrs. Botto and she agreed to let him have some money and came up then, meeting him after he left the office of Bain-Nicodemus, gave him a check for $2,500, that he called Bain-Nicodemus, talked to Mr. Shinn, told him he had the money from Mrs. Botto, to turn the order in for the job and that he would bring him the money on the following Monday; that he went up to the office of Bain-Nicodemus on the day he had promised to make the payment and gave the check for $750 and Shinn or Webb wrote out the check and he signed it; that sometime after that had occurred he had a statement from Bain-Nicodemus and he then saw that the $750 had not been credited to the Botto job; that he

then called Mr. Shinn inquiring about it, requesting the Botto job be credited with the $750 and that Mr. Shinn promised to do that. He further testified that some time later Mr. Shinn told him that Colonel Bain had said that unless they received a letter making such request, they could not change that credit. He claims that the letter, Exhibit 1 to his deposition, is the letter that he wrote in response to that telephone conversation.

There is no testimony in this record from either Mr. or Mrs. Botto.

As hereinbefore stated, if we are to conclude that the Chancellor reached his decision and pronounced his decree upon the theory that the record revealed the fact that Bethay had directed the $750 payment to be a credit on the Botto job, we are constrained to disagree. The record is otherwise.

Now taking up the question of whether Bain-Nicodemus knew the material was to be furnished for the Botto job and that it knew, through its agents and employees that the $750 originated with Mrs. Botto and in equity and good conscience it should have given credit for that $750 to the account for material furnished on the Botto job, the proof is not so convincing as it is that Bethay did not direct the $750 payment to be credited to the Botto account. Mr. Shinn does not recall whether Bethay told him that the money was to be furnished by the Bottos or that he would see Mrs. Botto and if she would let him have the money to make payment on the contract. Bethay is very positive in his testimony that such statements were made to Mr. Shinn, and that he called Mrs. Botto on the telephone in the presence of both Shinn and Webb. As before stated, Mr. Shinn knew of the contract between

Botto and Bethay. He had estimated the cost of the mill work and the order for that mill work had been given to him by Bethay.

The Bethay account, as kept by Bain-Nicodemus, and particularly that part of it shown by the ledger sheets filed as Exhibit 5 to the deposition of Mr. Webb, same being Exhibit 3 to the deposition of Shinn, beginning with April 3, 1950 and ending with December 11, 1951, shows that one general account had been kept of the material furnished Bethay, and that this material had been delivered to several places in and about the city of Memphis. Some of these points of delivery are desgnated at 1272 Látham, 882 Jefferson, Highway 51, 815 Faxon, 3545 Jackson, 3542 Jackson, 3575 Macon, 3118 Macon, 1694 Alta Vista, 3524 Jackson, 916 Leon, 976 North Dunlap, 972 North Dunlap, 967 Leon, 3518 Fontaine Road, 3273 Fontaine Road, and perhaps a few others. The balance due on the account ranged all the way from $18.24 to over $5.000, with credits on the account at several different dates. However, the account does show that between August 23, 1950 and December 11, 1951, no material was delivered by Bain-Nicodemus to Bethay except at the two points, 972 North Dunlap and 3273 Fontaine Road. It also appears that the account had been completely balanced, that is paid in full to the date of June 2, 1950, thus it will be seen that, as far as the credit extended Bethay is concerned, Bain-Nicodemus knew that these materials were for the two jobs, Grusin on Dunlap and Botto on Fontaine Road. The account nowhere else reveals payment of substantial credits like the one of $750 on October 20 and the $1700 on October 26 to have been made so close together.

It does not appear from the account ledger sheet, under the column of "Balance" that when the $750 was paid on October 20 the balance due on the account was reflected in the balance column, but immediately, or at least apparently so, when the $1,700 was paid the balance is shown in pencil directly opposite the credit of $1,700. It might be further stated that this balance sheet at one time, under the same date of October 20, 1951 in the column "Debits", showed an entry of $750 directly opposite the $750 entered in the "Credits" column, and that there is an ink line run through the $750 in the "Debits" column, indicating that a mistake was made by someone entering the item and that the debit for $750 was stricken out and the credit for $750 entered. Had this debit not been stricken out, it could just as easily indicate that on that date debit to the amount of $750 to the account of A. F. Bethay was balanced by the credit of the same amount in the credit column, and though it is not shown that any material was delivered on that date, Bethay states positively that the estimate by Shinn for the mill work on the Botto job was between $750 and $800, and such debit would have indicated a payment on the Botto material contract.

It is said by the complainant that when this credit was shown on what is referred to as the account then due, the rights of a third party, the Grusins, became involved, and that no change in that $750 credit item could be made without the permission and consent of the Grusins.

Both parties have relied upon the same legal authorities to sustain their respective positions.

As a general rule, the exercise of the right of appropriation of payments belongs exclusively to the

debtor and creditor and no third person may control or compel an appropriation different from that agreed on or made by them, and ordinarily credit will be given for a payment made by a debtor to a creditor who holds two accounts or debts against the debtor, to that debt which has matured. 70 C. J. S., Payment, sec. 76; 40 Am. Jur., Payment, sec. 121; Weaver v. Ogle, 2 Tenn. App. 563; First Nat. Bank v. Bovay, 13 Tenn. App. 689; Farnsworth & Co. v. Electrical Supply Co., 5 Cir., 112 F. (2d) 150, 130 A. L. R. 198.

An exception to the foregoing rule may be found when a contractor owes the material man two accounts, makes payment to the material man with funds paid to such contractor and the material man has notice of the source of such fund, it is the duty of the material man to give the credit so as to discharge or diminish the obligation chargeable against its source.

 In this State the material man has and can perfect, in the way provided by statute, a lien upon the property of a person who has contracted for improvements with a contractor to whom the material man has furnished materials for the structure, repairs or improvements. This being true, we hold that if the source of funds is known by a material man, it is his duty to credit a contractor's account, so that payments made by the contractor to the material man under such circumstances will protect the property at the source of the funds from the lien to the extent of such payment. In other words if the material man holds an unpaid account against the contractor for materials furnished under a certain construction contract and the owner under that contract pays a sum to the contractor, which the contractor in turn pays over to the material man, it is the duty of the material

man to apply that fund, if he has knowledge of its source, to that account which will reduce the potential liability of the owner.

"Where the payment is made from funds or property subject to a mortgage or other lien, the payment may not be applied to other debts of the debtor over the objection of the person claiming the lien." 70 C. J., p. 281, sec. 78.

"Another limitation put on the power of the creditor to apply payments is that where money is derived from a particular source or fund it must be applied to the relief of the source or fund from which it was derived,—at least if the source of the fund is known to the creditor or person receiving the payment." 40 Am. Jur. p. 800, sec. 123.

"It is universally agreed that if both the debtor and the creditor have failed to make an application of a payment, the duty to do so devolves upon the Court, it being variously stated that the payment will be applied according to the intrinsic justice and equity of the case, * * *" 40 Am. Jur. p. 803-4, sec. 129; Weaver v. Ogle, 2 Tenn. App. 563.

■■ We find that the accounut of Bain-Nicodemuus, as shown by its ledger sheet on file in this case against A. F. Bethay, was kept in such a manner, particularly with respect to the Botto and the Grusin jobs, that Bain-Nicodemus could have considered and applied the $750 as a credit on the Botto account without any invasion of the rights of Grusin. We hold that under all the circumstances reflected by the record in this case that Bain-Nicodemus had positive knowledge of the source of the funds with which the $750 was paid and that in equity and

good conscience that payment should be credited against the Botto account. This being true, there is necessarily a legal conflict between the report of the Clerk and Master and the decree of the Chancellor sustaining the exceptions made to the Master's report.

Exhibit 5 to the deposition of Mr. Webb, the same as Exhibit 3 to the deposition of Shinn, ledger sheets from the books of Bain-Nicodemus showing the account of A. F. Bethay, as hereinbefore referred to shows that ten separate items of material were delivered to the Fontaine Road job (Botto) on six different days, the charge for each delivery ranging from $2.78 to $450.95. Colonel Bain in his deposition at page 25 of the transcript, made the following answer to the following question:

"Q. And this amount of $1,133.36 is now due and owing by Bethay on this job?

"A. It is. I don't know but that I shold qualify that. It was supposed to be charged to the Botto job, but it wasn't designated by him. It was run in on an office report of records showing that it was ordered for that job and it was delivered to that job."

Then on page 27 of the transcript a part of his answer to a question is that "I made a personal decision on that, and charged it to the Botto job."

In the brief of appellant replying to the brief of appellee the appellant relies upon the cases of McDowell v. McDowell, 144 Tenn. 452, 456, 234 S. S. 319, 18 A. L. R. 623 and Bragg v. Osborn, 147 Tenn 381, 384, 248 S. W. 19 as authority for his statement that the $750 credit in question cannot be considered a trust fund. These two cases refer to funds created by the hypothecation or sale of negotiable instruments and the funds deposited in banks

co-mingle with other funds. Following these citations in his brief, counsel for Bain-Nicodemus concludes with this statement:

"We, therefore, respectfully submit that there is no basis of fact or merit in the contention of Mrs. Botto that she is entitled to have the $750 in question transferred from the Grusin account and applied as a credit on account of complainant's claim against her property."

But we do not consider the decree of the lower court to mean that there would of necessity have to be such a transfer made. We think the account was kept in such fashion and that Bain-Nicodemus had such knowledge of the source of the payment of that $750, shown as a credit by its books as that in equity and good conscience it is bound to consider the fact that such fund was for the payment of material for the Fontaine Road job, as shown by its own record, and to so credit that job. If Bain-Nicodemus undertook to apply it to the Grusin job, and kept its records in such condition, and had such knowledge, as that it should be charged to the Botto job, the owners of the Botto property should not be required to set up such statement of facts as would necessarily debit the Grusin job with that amount, in order to be relieved of that much of the lien against their own property.

The result is, therefore, that the exceptions of the appellant are overruled, the decree of the Chancellor affirmed and the appellant, Bain-Nicodemus, Inc. is taxed with the cost of this cause, and this cause is remanded to the Chancery Court of Shelby County for such action as may be necessary for the enforcement of this decree.

Swepston, P. J. (Western Section), and Carney, J., concur.