**GENEVA PIPE COMPANY, a Utah company, Plaintiff and Appellant,**

v.

**S & H INSURANCE COMPANY, a California corporation, Defendant, Third-party Plaintiff and Respondent,**

v.

**John W. MAUGHAN and Gladean Maughan, Third-party Defendants.**

**No. 19273**

Supreme Court of Utah.

Jan. 31, 1986.

Gary H. Weight, Provo, for plaintiff and appellant.

Joel R. Dangerfield, Bryce E. Roe, Salt Lake City, for defendant, third-party plaintiff and respondent.

HOWE, Justice:

Plaintiff, Geneva Pipe Co., seeks reversal of a summary judgment awarded to S & H Insurance Co., defendant.

In February of 1981, defendant issued material payment bonds to insure payment to persons performing labor on and supplying materials to two construction projects with the city of Monticello in San Juan County, Utah. The general contractor on the projects was third-party defendant, John Maughan, dba Jonco Construction Co. (Jonco). At the request of Jonco, plaintiff supplied labor and materials to the two projects, for a total value of $222,282.18.

Plaintiff received three payments from Jonco in July, September, and October of 1981, totalling $105,000. These checks were designated by Jonco to be applied to the Monticello project account. Plaintiff received two additional checks, one in June for $45,000 and one in November for $7,500, which were not designated for specific application. Plaintiff applied both checks to the payment of charges made by Jonco prior to the Monticello projects.

Jonco failed to pay the plaintiff the balance owing on the Monticello projects and filed for bankruptcy. Plaintiff brought this action against the defendant to recover the balance owing on those projects and alleged that it had not been notified by Jonco to apply the June and November payments to those projects. It further alleged that during the years it had been doing business with Jonco, a period exceeding four years, its practice had been to apply checks not otherwise designated to Jonco's oldest charges.

Defendant moved for summary judgment based on its contention that there was no genuine issue as to any fact relevant to the material issues raised. Jonco's president, by affidavit, swore that when he learned that the checks had not been applied to the Monticello projects, he notified plaintiff that they should be so applied. Defendant subsequently tendered into court the amount claimed to be owing by plaintiff, reduced by the total amount of the June and November checks, $52,500, plus interest, for a total of $77,992.16. After entering its order awarding summary judgment to defendant, the court released the funds to plaintiff on June 6, 1983.

I.

On appeal from a summary judgment, we review the evidence in a light most favorable to the losing party. An award of summary judgment is appropriate if the pleadings, affidavits, and other submissions of the parties show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Utah R.Civ.P.; *Norton v. Blackham*, Utah, 669 P.2d 857 (1983); *Bowen v. Riverton City*, Utah, 656 P.2d 434 (1982); *Massey v. Utah Power and Light*, Utah, 609 P.2d 937 (1980).

Plaintiff assails the lower court's reliance on U.C.A., 1953, § 58A-1-19 [1] in awarding summary judgment. That section provides:

---

**1.** The language of section 58A-1-19, which was formerly section 58-23-14.5 (as cited in *Western Ready Mix Concrete Co. v. Rodriguez,* Utah, 567 P.2d 1118 (1977)), is currently found in section 58A-1a-12 (as enacted 1985).

Any owner or contractor in making any payment to a materialman, contractor, or subcontractor with whom he has a running account, or with whom he has more than one contract, or to whom he is otherwise indebted, shall designate the contract under which the payment is made or the items of account to which it is to be applied. When a payment for materials or labor is made to a subcontractor, or materialman, such subcontractor or materialman shall demand of the person making such payment a designation of the account and the items of account to which the payment is to apply. In any case where a lien is claimed for materials furnished or labor performed by a subcontractor or materialman, it shall be a defense to the claim that a payment made, by the owner to the contractor for the materials has been so designated, and paid over to the subcontractor or materialman, and that when the payment was received by the subcontractor or materialman he did not demand a designation of the account, and of the items of account to which the payment was to be applied.

Plaintiff contends that the lower court erred in relying on this section because it applies only when a mechanics' lien is claimed. We agree. We find the section to be not applicable to this case, despite defendant's contention that *Western Ready Mix Concrete Co. v. Rodriguez*, Utah, 567 P.2d 1118 (1977), mandates that the statute is controlling here. However, that case, unlike the instant case, was brought to foreclose a mechanics' lien. We there held section 58A–1–19 (then section 58–23–14.5) to be applicable and that a materialman had the duty to demand from the contractor a designation of the account to which a payment is to be applied. If the materialman fails to do so, such failure may be asserted by the owner as a defense in any lien foreclosure action brought by the materialman. Plaintiff correctly points out

that the language of the statute restricts use of the defense to "any case where a *lien* is claimed for material furnished or labor performed by a subcontractor or materialman. . . ." We are bound by that legislative limitation. Inasmuch as the materialman is precluded under U.C.A., 1953, § 38–1–1 [2] from placing a lien on public property, as is the case here with Monticello, the defense which may be asserted under section 58A–1–19 does not apply to a claim of a materialman furnishing materials or labor to a bonded public construction project. Thus, the materialman who has not been paid in full within the time period required by U.C.A., 1953, § 63–56–38 [3] may proceed directly against the bonding company without encountering such a defense against its claim.

## II.

Concomitantly with the determination that section 58A–1–19 is not controlling here, we must now determine whether plaintiff was entitled to judgment against defendant as a matter of law. Similar cases have been before this Court on previous occasions. In *Salt Lake City v. O'Connor*, 68 Utah 233, 249 P. 810 (1926), a case very similar to the one at bar, O'Connor, a contractor, entered into a contract with Salt Lake City for construction of a sewer. He obtained a bond for his faithful performance and prompt payment of labor and materials from National Surety Co. Utah Fire Clay Co. furnished materials for the project. Sums paid by O'Connor to Utah Fire Clay Co. were applied to preexisting debts of O'Connor which were not secured by the bond. The surety contended that the payments should have been applied to pay for materials furnished to the job from which the proceeds came and thus exonerate the surety on the contract, rather than permit the payments to be applied to an old debt. Unlike the instant

---

**2.** Section 38–1–1 provides: "The provisions of this chapter shall not apply to any public building, structure, or improvement."

**3.** Section 63–56–38(3) requires that full payment be made "within 90 days from the date on which the last of the labor was performed or material was supplied. . . ."

case, however, O'Connor had *directed* the materialman, who was unaware of the source of the payments, to apply the payments to his old debts. In that case at 68 Utah 233, 242, 249 P. 810, we noted:

> In transactions like the one under consideration, the surety has ample facilities for protecting itself. It may with propriety reserve an exercise of surveillance over the disbursement of the proceeds of contracts for the performance of which it is surety. Materialmen dealing with contractors cannot do so. They cannot, consistent with business proprieties, inquire into the sources of money paid them. When a surety as in the case at bar, permits money on the contract to be paid the contractor unconditionally, which it must know he may use for general purposes, we see no sufficient reason for sustaining any claim or equity in behalf of the surety, in such money, after it has been paid to another in the due course of business. The risk of such a loss is one of the hazards which a surety, for a fixed consideration assumes by its contract.

Thus, the materialman was at liberty to apply the payments to the old debt. Later, in *Utah State Building Commission v. Great American Indemnity Co.*, 105 Utah 11, 140 P.2d 763 (1943), we considered whether "knowledge or lack of it on the part of the materialman as to the source of the money paid" was a relevant factor in determining the application of payments. We cited with approval the case of *Sturtevant Co. v. Fidelity & Deposit Co.*, 92 Wash. 52, 158 P. 740, 742 (1916), as a good statement of the law:

> It is elementary law that: A creditor may apply a payment voluntarily made by a debtor without any specific appropriation, where there are two or more debts, to whichever debt he pleases.... Another exception to the rule ... obtains when the money ... is *known to the creditor to have been derived from a particular source or fund,* in which case he cannot, without the consent of the debtor, apply it otherwise than to the exoneration of the source or fund from which it was derived.

(Emphasis added; citations omitted.)

The Washington court, in *Sturtevant,* upheld a creditor's right to apply the money as it saw fit and based its determination upon the fact that the creditor had no knowledge of the source of the money.

Subsequently, in *Davis County Board of Education v. Underwood,* 10 Utah 2d 145, 349 P.2d 722 (1960), we acknowledged that it would be "quite impracticable to impose the duty upon a material supplier dealing with a contractor to *inquire* as to the source" of payment. We further noted that he would likewise have no duty to apply the money to any particular job when he was *unaware of its source.* 10 Utah 2d at 148, 349 P.2d 722.

Several jurisdictions have reached the same conclusion. *See Cooper v. Sparrow,* 222 Ark. 385, 259 S.W.2d 496 (1953); *Bain-Nicodemus, Inc. v. Bethay,* 40 Tenn.App. 487, 292 S.W.2d 234 (1953); *F.D.I.C. v. General Investments, Inc.,* 522 F.Supp. 1061 (E.D. Wis.1981). In *Trans-American Steel Corp. v. J. Rich Steers, Inc.,* 670 F.2d 558 (5th Cir.1982), the Fifth Circuit Court of Appeals noted that the fact a creditor knows that one of a debtor's source of funds is from a contract secured by a payment bond does not amount to constructive knowledge as to the source of payments. To conclude otherwise would attempt to convert a rule "requiring action on the part of a creditor when he 'knows or should have known' into a duty on the part of the creditor to make inquiry." *Id.* at 564. The Restatement (Second) of Contracts § 258 (1982) is in accord:

> (1) Except as stated in Subsection (2), as between two or more contractual duties owed by an obligor to the same obligee, a performance is applied according to a direction made by the obligor to the obligee at or before the time of performance.
>
> (2) If the obligor is under a duty to a third person to devote a performance to the discharge of a particular duty that the obligor owes to the obligee and the obligee *knows or has reason to know*

this, the obligor's performance is applied to that duty.

(Emphasis added.)

 Thus, whether plaintiff knew or had reason to know the source of the two undesignated payments made in June and November becomes a relevant factual issue which, from the record on appeal, remains in dispute. We reverse and remand to the lower court to make that determination and for further proceedings. Costs to appellant.

HALL, C.J., and STEWART and DURHAM, JJ., concur.

ZIMMERMAN, J., concurs in the result.