**ALSIDE SUPPLY CENTER,**
**Plaintiff/Appellee,**

v.

**Paul Edward VINSON, Jr., and wife, S. Jan Vinson, Defendants/Appellants.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Oct. 3, 1990.

Permission to Appeal Denied by Supreme Court Dec. 31, 1990.

Michael W. Edwards, Hendersonville, for defendants/appellants.

James L. Fuqua, Jr., Hendersonville, for plaintiff/appellee.

## OPINION

CANTRELL, Judge.

This case requires us to re-examine the Tennessee statutes governing liens that have been placed on real property by suppliers of construction materials used to improve that property. The chancellor sustained the lien. We reverse because neither the contractor nor the supplier properly allocated the payments made by the homeowner to the contractor's account with the supplier.

The defendants in this action, Paul and Jan Vinson, entered into a contract with Roger Green, d/b/a Home Systems, to install vinyl siding on their home. As is customary in the business, Green charged the materials needed for the job on an open account with the plaintiff, Alside Supply Center. Green charged $2,424.69 worth of materials on October 4, 1988, and another $317.82 worth of materials on October 31, 1988. Alside kept a running account on Green, whereby the homeowner's name was noted next to a ledger entry along with a list of the materials charged. In essence, Alside kept up with all the jobs Green was working on and all the materials charged for each particular job.

Green had an outstanding balance of $3,835.18 at the time he acquired the initial materials for the Vinson job. Each time he charged more materials or made a payment, the difference was simply added to

or subtracted from the bottom line. But each payment reflected on Alside's ledger was designated as being applied to a specific outstanding invoice, and the oldest outstanding invoices were generally credited first.

Green completed the Vinson job on November 1, 1988, and Mrs. Vinson paid the full contract price of $5,144.00. Green deposited that check into his general account and the record reveals that this was all the money he had in that account.

On November 3, 1988, Green went to Alside and returned $217.24 worth of materials from another job, and $59.18 worth of materials which was credited to the Vinson job. At the same time, Green paid $3,600.00 on his account, which can be traced directly to the $5,144.00 paid by the Vinsons. Green did not designate that the money be applied to the Vinson job and Alside made no such inquiry, but merely applied it to the oldest outstanding invoices. Thus, although the defendants paid Green in full and that same money was paid to the plaintiff, the Vinson job was never given any credit for the materials Alside furnished.

Roger Green subsequently filed bankruptcy while still having an outstanding balance with Alside of over $3,500.00. Alside then sent the defendants a notice of lien on their home, claiming $2,683.33 for materials used by Green to improve their dwelling. Within the statutory period, Alside filed a complaint and obtained an attachment to enforce the lien. The trial court sustained the lien on defendant's property, holding that the burden is on the homeowner to insure that suppliers have been paid and that the contractor's account designated for the owner's job has been properly credited.

The issue presented for review is whether the trial court erred in enforcing the plaintiff's materialmen's lien, where sufficient funds to pay for the materials can be traced from the defendant to the supplier, but the supplier credited those funds to an older account of the contractor.

This very issue was addressed recently by the Tennessee Supreme Court in *Hayes*

*Pipe Supply v. McKendree Manor, Inc.,* 695 S.W.2d 174 (Tenn.1985). In that case, the supplier sought to enforce a lien upon real property owned by the defendant. The defendant had fully paid a contractor for the work performed on its property, and the contractor had from time to time made payments to the supplier. The supplier never credited any of these payments to the account which the contractor had established with it for this particular job. Instead, all payments had by agreement between the supplier and contractor been credited to the oldest outstanding account. The reason the oldest accounts were credited first is because the supplier, in order to add finance charges on invoices over thirty days old, had to factor its accounts receivable with a firm in Atlanta, Georgia. The factor would only accept accounts less than 120 days old.

▇ In interpreting the provisions of Tenn.Code Ann. §§ 66–11–138 to –140, the Court held that any furnisher of materials and supplies to a contractor must act in good faith, and if a supplier falsifies accounts or connives with the contractor to defraud the owner, he loses his right to enforce the lien. *Id.* at 178; *Pidgeon–Thomas Iron Co. v. McKnight,* 8 Tenn.Civ. App. (8 Higgins) 1 (1918). The court noted that a contractor receiving payments from a landowner is under a very strict statutory duty to apply those payments properly and not to divert them so as to leave the landowner exposed to the possibility of a lien. *Hayes Pipe Supply,* 695 S.W.2d at 179.

The court in *Hayes Pipe* held that since a court may reallocate payments for the purposes of achieving equity and a result consonant with good conscience, the supplier was precluded from enforcing a lien on the landowner's property. Even if a supplier does not have actual knowledge of the source of funds offered as payment by a contractor, the rule in this state is that the supplier may still be required to properly allocate the payments if it has knowledge of facts from which it reasonably should know the source. *Bain–Nicodemus, Inc. v. Bethay,* 40 Tenn.App. 487, 292 S.W.2d 234 (1953).

Thus, the facts of this case must be examined in light of *Hayes Pipe* and the reasoning of that decision. The Supreme Court found that although the supplier and contractor did not act in actual bad faith or with intent to defraud the homeowner, they certainly were acting very closely to divert funds from particular jobs and to apply them to older invoices, on jobs to which the payments had no correlation, for their mutual benefit. In view of the close monitoring of the contractor's books and accounts receivable, the supplier was charged with constructive knowledge of the source of funds.

In the present case, we also do not find from the record any evidence of actual intent to defraud the defendants. But any use of funds by a contractor or supplier for any purpose other than payment of an account for materials or labor used to improve property of the one making payment, is prima facie evidence of intent to defraud. Tenn.Code Ann. § 66–11–140. And while the plaintiff here may not have been monitoring Green's accounts receivable as closely as the supplier in *Hayes Pipe* was, both suppliers should have known that the older invoices they were crediting current payments to were not necessarily the accounts from which those funds came. The plaintiff here credited the $3,600.00 tendered by Green on November 3, 1988, to accounts 90021 through 14960. Those accounts represent nine separate ledger entries from August 1, 1988 until September 23, 1988. Two of those entries are monthly interest charged on August 1 and September 1 to Green's entire outstanding balance. The other seven entries are for materials furnished on two other projects, the Johnson job and the Brewington job.

This diversion of funds was clearly of benefit to both Alside and Green. Alside must send notice of a lien to an owner within ninety days after the work is complete or they will lose that right. Tenn. Code Ann. § 66–11–115(b). By crediting the oldest invoices, Alside can be assured of having the more recent jobs available on which to claim a lien should Green ever default. On the other hand, Green was able to get materials on credit so he could complete his work, and his supplier could keep an active source of collateral in the way of possible liens. This arrangement worked out quite nicely for everyone except the owners who promptly paid their bills. They lived under the shadow of a materialmen's lien that would not fade until ninety days after completion of the work they had already paid for. As the Court in *Hayes Pipe* recognized, "The plan or agreement which they entered into for the deliberate diversion of funds received by Ring to its older invoices, regardless of the source of payment, simply cannot be upheld as against innocent property owners.... Hayes may not have known the specific amount of each draw, but it did know that funds from McKendree Manor were being paid to Ring during the summer of 1981." *Id.* at 179–80.

■ Applying the reasoning of these prior decisions, we hold that the Chancery Court erred in not using its equitable powers to reallocate the $3,600.00 payment towards the materials used for the Vinson's job. It is uncontested that this money can be traced to the $5,144.00 paid by Mrs. Vinson. As stated earlier, any supplier who falsifies his accounts or connives with a contractor to defraud the owner loses his right to enforce a lien. *Hayes Pipe*, 695 S.W.2d at 178; *Pidgeon–Thomas Iron Co. v. McKnight*, 8 Tenn.Civ.App. (8 Higgins) at 6. By maintaining this system of bookkeeping, Alside was falsifying its accounts. And it can also be said that Alside connived with Green to defraud the Vinsons because the plaintiff's system of diverting payments is prima facie evidence of intent to defraud. Tenn.Code Ann. § 66–11–140.

The position we take with regard to the equitable reallocation of payments is also consistent with the Restatement (Second) of Contracts. Section 259(2) of the Restatement states that where a debtor does not direct application of payment as between two or more matured debts, the creditor cannot apply the payment to one debt if the debtor could not have directed its application to that debt. As stated previously, a contractor receiving payments from a landowner is under a very strict

statutory duty to apply those payments properly and not to divert them so as to leave the landowner exposed to the possibility of a lien. *Hayes Pipe*, 695 S.W.2d at 179. The Restatement further explains:

(1) If neither the debtor nor the creditor has exercised his power with respect to the application of a payment as between two or more matured debts, the payment is applied to debts to which the creditor could have applied it with just regard to the interests of third persons, the debtor and the creditor.

(2) In applying payments under the rule stated in Subsection (1), a payment is applied to the earliest matured debt and notably among debts of the same maturity, except that preference is given

(a) to a debt that the debtor is under a duty to a third person to pay immediately....

Restatement (Second) of Contracts § 260 (1981).

Comment b to § 260 explains that when a contractor uses progress payments to pay his supplier, whom he owes for other materials as well as for materials used on the job generating those payments, then those payments must be applied to the debts for materials used on that job because the contractor owes a duty to the owner to pay that debt. The result does not depend on whether the supplier knew or had reason to know the source of the money used as payment. Restatement (Second) of Contracts § 260 Comment b (1981).

The judgment of the court below is reversed and the plaintiff's claim for a lien on the defendant's property is dismissed. The cause is remanded to the Sumner County Chancery Court for any further proceedings that may become necessary. Costs are taxed to the appellees.

TODD, P.J., and KOCH, J., concur.